**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| PAUL RICHARD PAYNE,<br><br>Plaintiff,<br><br>v.<br><br>CLINT FRIEL et al.,<br><br>Defendants. | Case No. 2:04-CV-844 DAK<br><br><br>O R D E R |

Plaintiff, Paul Richard Payne, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983.  *See* 42 U.S.C.S. § 1983 (2006).  Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(b).  *See* 28 *id.* § 1915.  This case is now before the Court for screening of Plaintiff's Complaint and Amended Complaint under 28 U.S.C. § 1915(e).

## ANALYSIS

### I. Screening Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss any claims in a complaint filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief may be granted.  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Perkins v. Kan.*

*Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).  When reviewing the sufficiency of a complaint the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Because Plaintiff is proceeding *pro se* the Court must construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Id.* However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  While Plaintiff need not describe every fact in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Id.*

## II. Sufficiency of Plaintiff's Complaint

Plaintiff's Complaint lists seventeen separate "counts" of civil rights violations against eighteen individual defendants. The original Complaint is comprised of sixty pages of single-spaced handwritten text, accompanied by over one-hundred pages of attached exhibits.  Plaintiff has also filed an Amended Complaint of roughly fourteen additional pages accompanied by roughly two-hundred seventy pages of additional exhibits.[1]  Plaintiff seeks a

_____

[1] Plaintiff's Amended Complaint does not allege any additional claims and appears to be merely supplemental to his original Complaint.  In reviewing the sufficiency of Plaintiff's

whole range of injunctive and declaratory relief, as well as compensatory and punitive damages, on each of his claims.

At the outset the Court notes that Plaintiff's pleadings are in blatant disregard of Federal Rules of Civil Procedure, which state that a complaint shall contain "a *short and plain* statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2) (emphasis added).  A complaint which violates Rule 8 may be dismissed when it is "so verbose, confused and redundant that its true substance, if any, is well disguised." *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965), cert. denied 382 U.S. 966, 86 S. Ct. 458 (1965); *Lowery v. Hauk*, 422 F. Supp. 490 (C.D. Cal. 1976).  Although the Court finds that the substance of Plaintiff's pleadings is indeed well-disguised by needless argument and redundant fluff, rather than dismiss his pleadings without prejudice, the Court will proceed with substantive screening in this instance.  Plaintiff is warned, however, that future pleadings of this nature will be summarily dismissed.  Plaintiff would also be well-advised to take note of, and strictly adhere to the Federal Rules of Civil Procedure, and the District of Utah local rules, in the future.  The Court will address each of Plaintiff's claims in turn.

---

allegations the Court considers the allegations presented in both the original and amended complaints.  For simplicity, however, this order will not differentiate between the two documents unless doing so is necessary to avoid confusion.

**Count I**

Count One of Plaintiff's Complaint alleges denial of due process stemming from prison disciplinary proceedings.  Plaintiff was found guilty of possession of a weapon and possession of contraband for which he was sentenced to thirty days confinement in punitive isolation and a $100 fine.  Plaintiff alleges that the disciplinary proceedings denied him due process because certain witnesses were not interviewed, the "chain of custody was broken" regarding certain evidence presented, Plaintiff was not allowed all the time he wanted to present his defense, and the hearing was not recorded.  Plaintiff also argues that the disciplinary sanctions he received violated the Double Jeopardy clause because he also had his privilege level reduced by the Offender Management Review (OMR) committee based on the same infractions.

The Supreme Court has held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a Defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975 (1974).  Only when a disciplinary proceeding threatens a constitutionally protected liberty interest is a prisoner guaranteed due process under the Federal Constitution.  *Id.*  And, even where protected liberty interests are implicated, prisoners are only entitled to the "the minimal safeguards afforded by the

4

Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quotation marks and citations omitted.)  These minimal safeguards require that a prisoner "receive advance written notice of the charges against him, the right to call witnesses and present evidence in his own defense *if doing so does not jeopardize institutional safety or correctional goals*, and a written statement indicating the evidence relied on and the reasons supporting the disciplinary action." *Caserta v. Kaiser*, No. 00-6108, 2000 WL 1616248, at *2 (10th Cir. Oct. 30, 2000)(emphasis added).  Although prison rules may include additional procedural guidelines for disciplinary hearings, an inmate cannot rely on those rules to state a constitutional due process claim because "state procedures do not define what is required under federal due process."  *Glatz v. Kort*, 807 F.2d 1514, 1517 n. 4 (10th Cir. 1986).

Plaintiff's allegations do not support a finding that he was denied the minimal level of due process required for prison disciplinary proceedings under the Constitution.  In fact, Plaintiff seems to confuse the prison disciplinary process with a criminal proceeding.  Plaintiff admits that he received advance written notice of the hearing, that he was allowed to present evidence, and that the grounds for the guilty finding were set out in writing.  Clearly, the officers' statements on which the hearing officer relied in reaching his verdict amounted to "some

evidence" of Plaintiff's guilt, which is all that is required in prison disciplinary proceedings.

The Court also rejects Plaintiff's argument that the additional sanctions imposed through the OMR framework amounted to double jeopardy.  It is well established that the Constitution's prohibition against double jeopardy applies only to proceedings that are "essentially criminal" in nature. *Helvering v. Mitchell*, 303 U.S. 391, 398, 58 S. Ct. 630, 632 (1938).  Double jeopardy protections do not apply to prison disciplinary proceedings.  *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994).

Thus, the Court concludes that the allegations in Count I of Plaintiff's Complaint fail to state a claim on which relief can be granted.

### Count II

Count Two alleges that the Utah Board of Pardons and Parole (BOP) denied Plaintiff due process in his parole proceedings, imposed additional sanctions on Plaintiff in violation of the Double Jeopardy clause, and violated Plaintiff's Fifth Amendment right against compelled self-incrimination.  Specifically, Plaintiff asserts that the BOP failed to strictly adhere to its sentencing matrix in determining Plaintiff's eligibility for parole, wrongly considered Plaintiff's involvement in a prison murder for which Plaintiff was not convicted, and drew a negative

inference from Plaintiff's refusal to answer questions regarding his involvement in the murder.  Plaintiff asserts that the Board's alleged errors may result in his being incarcerated for 126 months longer than he would face under the Board's parole matrix guidelines.

It is well established that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979); *also see Bd. of Pardons v. Allen*, 482 U.S. 369, 373, 107 S. Ct. 2415, 2418 (1987).  Moreover, Utah's parole statute does not create a liberty interest entitling prisoners to federal constitutional protection.  *See Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994); *accord Dock v. Latimer*, 729 F.2d 1287, 1291-92 (10th Cir.) (reaching same conclusion based on predecessor Utah parole statute), *cert. denied*, 469 U.S. 885 (1984).  Simply put, parole is a privilege, not a constitutional right.  *See Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir.), *cert. denied*, 506 U.S. 1008 (1992).

Because the Utah parole statute does not create a liberty interest entitling prisoners to federal constitutional protection, there is no basis for a federal due process claim arising from the conduct of Plaintiff's state-level parole hearings.  While it is true that the Utah Supreme Court has

imposed state-level due process requirements on the Board at the original parole hearing stage, *see, e.g., Labrum v. Utah State Bd. of Pardons*, 870 P.2d 902, 911 (Utah 1993), this does not give rise to a federal due process claim. "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek*, 26 F.3d at 1016.

Plaintiff's reliance on the Double Jeopardy clause also fails as to Count Two. As the Utah Supreme Court has explained, under Utah's indeterminate sentencing system, the Board's "power to pardon and parole" is "separate and distinct" from the courts' "power to sentence." *Padilla v. Utah Board of Pardons & Parole*, 947 P.2d 664, 668 (Utah 1997). "[T]he Board merely exercises its constitutional authority to commute or terminate an indeterminate sentence that, but for the Board's discretion, would run until the maximum period is reached." *Id.* Exhibit 2A to Plaintiff's Complaint shows that, in addition to his other convictions, Plaintiff has been sentenced to a prison term of five-years-to-life for Aggravated Robbery. Based on Plaintiff's life sentence, and the Board's absolute discretion in granting or denying parole, the Court finds no merit to Plaintiff argument that the Board's alleged computational or procedural errors may cause him to serve more than his valid sentence.

Finally, the Court rejects Plaintiff's argument that the Board, by drawing a negative inference from Plaintiff's refusal

to answer questions about his involvement in the murder of another inmate, violated the Fifth Amendment's prohibition against compelled self-incrimination.  Compulsion for Fifth Amendment purposes exists only when some factor denies the individual the "free choice to admit, to deny, or to refuse to answer." *Lisenba v. California*, 314 U.S. 219, 241, 62 S. Ct. 280 (1941).  In *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 286, 118 S. Ct. 1244, 1252 (1998), the Supreme Court held that the Ohio Adult Parole Authority could draw adverse inferences from an inmate's refusal to answer questions at a clemency hearing without "compelling" the inmate to respond within the meaning of the Fifth Amendment.  As the Supreme Court pointed out, an inmate is such circumstances "merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of which has ever been held to violate the Fifth Amendment." *Id.*  Based on the Supreme Court's reasoning in *Woodard* the Court concludes that Plaintiff's allegations do not support the conclusion that the Board compelled Plaintiff to incriminate himself in violation of the Fifth Amendment.

For the foregoing reasons the Court finds that Count II of Plaintiff's Complaint fails to state a claim on which relief can be granted.

## Count III

Plaintiff's third cause of action alleges that the prison's inmate classification system, which governs an inmate's housing assignment and privilege level, violates Fifth and Fourteenth Amendment guarantees of due process.  Specifically, Plaintiff alleges that Defendants incorrectly determined Plaintiff's classification level, failed to revise their determination based on various discrepancies raised by Plaintiff, and manipulated the classification system to keep plaintiff in "Intensive Management."

It is well established that prisoners have no right under the Federal Constitution to any specific classification or housing assignment.  *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 869 (1983); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994); *Levoy v. Mills*, 788 F.2d 1437, 1440 (10th Cir. 1986).  "Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison."  *Templeman*, 16 F.3d at 369.  An inmate's classification implicates protected liberty interests only where it imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301 (1995), or threatens to lengthen his term of confinement, *id.* at 487.

Plaintiff cannot show that his classification imposes an
"atypical or significant" hardship on him in relation to the
ordinary incidents of prison life, or is likely to lengthen his
term of confinement.  The regime to which Plaintiff is subjected
as a result of his classification is clearly "within the normal
limits or range of custody which [his] conviction has authorized
the State to impose."  *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.
Ct. 2532, 2538 (1976); *see also Sandin*, 515 U.S. at 487.  Thus,
regardless of any alleged errors made in determining Plaintiff's
classification level or housing assignment he is not entitled to
relief under § 1983.

## Count IV

Count Four alleges that the prison contract attorneys denied
Plaintiff meaningful access to the courts.  Specifically,
Plaintiff alleges that the prison contract attorneys failed to
properly respond to Plaintiff's requests for various legal
materials or other assistance.  Plaintiff also asserts that the
prison's contract for legal services to assist indigent inmates
does not satisfy constitutional requirements.

It is well-recognized that indigent prison inmates have a
constitutional right to adequate and meaningful access to the
courts, including provision of a law library or assistance from
persons trained in the law.  *See, e.g., Bounds v. Smith*, 430 U.S.
817, 821-22, 97 S. Ct. 1491, 1494-95 (1977); *Penrod v. Zavaras*,

94 F.3d 1399, 1403 (10th Cir. 1996); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).  However, to successfully assert a constitutional claim for denial of access to the courts, a plaintiff must allege (1) the inadequacy of the library or legal assistance furnished by the jail and (2) "that the denial of legal resources hindered [his] efforts to pursue a nonfrivolous claim."  *Penrod*, 94 F.3d at 1403; *accord Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996).  Further, the nonfrivolous claims involved must be "habeas corpus or civil rights actions regarding current confinement."  *Carper*, 54 F.3d at 616; *accord Lewis*, 116 S. Ct. at 2181-82.  Finally, "an inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings."  *Carper*, 54 F.3d at 617.

Plaintiff's allegations do not support the conclusion that Defendants' alleged failure to provide Plaintiff with the requested assistance substantially hindered Plaintiff's efforts to prepare initial pleadings in a non-frivolous civil rights or habeas corpus proceeding.  Although Plaintiff lists a number of items which he allegedly requested from the contract attorneys without success, it appears that the vast majority of those items were not necessary for filing of initial pleadings.  As previously explained, all that is required of initial pleadings is "(1) a short and plain statement of the grounds upon which the

court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Extensive legal argument with citations to relevant case law and reams of supporting documents, such as Plaintiff has compiled, are not required for the filing of initial pleadings.

Moreover, Plaintiff's assertion that he was significantly hindered by the contract attorneys from filing initial pleadings is belied by the mountain of materials he has managed to produce in this case. Clearly, Plaintiff has not faced substantial difficulty in compiling evidence to support his claims, or in presenting them to the Court.

Finally, Plaintiff's constitutional challenge to the sufficiency of the prison's contract for legal services for indigent inmates is without merit. As an initial matter, it is doubtful whether Plaintiff has standing to challenge the sufficiency of the contract, given his failure to demonstrate any significant injury caused by the allegedly inadequate legal services contract. More importantly, the contract is clearly supported by controlling Tenth Circuit precedent defining the scope of the constitutional requirement for provision of legal assistance to indigent inmates. In *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995), the Tenth Circuit specifically

reviewed the Utah Department of Correction's legal services plan and found it constitutionally sufficient.  Plaintiff has not alleged facts showing that the legal services plan now in place, or the current contract for legal services, substantially diverges from the standards set out in *Carper*.

Thus, the Court concludes that Count Four of Plaintiff's Complaint, alleging denial of access to the courts, fails to state a claim on which relief can be granted.

### Count V

Count Five alleges that Defendants "have consciously devised a progrom to abuse, oppress and torture prisoners . . . in which prisoners are afforded zero due process and no redress."  (Compl. at 18.)  The Court liberally construes this as a claim of cruel and unusual punishment under the Eighth Amendment.  Plaintiff's primary allegation supporting this count of the Complaint is that Defendants are subjecting him to "wanton infliction of sleep and sensory deprivation."  Specifically, Plaintiff challenges Defendants' use of a metal plate to cover the window on his cell door.  Plaintiff complains that the cover prevents him from seeing out and that the noise caused by opening and closing the cover during the night interferes with Plaintiff's sleep.

The Court finds this claim to be completely without merit.  Plaintiff has not offered any legal basis for this claim whatsoever.  Nor has he offered sufficient facts to support his

14

assertion that Defendants deliberately use the metal window covers "to harass, abuse and oppress" prisoners.  Plaintiff does not dispute that the covers have a legitimate safety and security function, however, he asserts that a cover made of transparent high-strength plastic would be just as effective.  Given the fact that the window covers are reasonably related to legitimate security concerns Plaintiff's preference for a transparent cover is irrelevant.  Thus, the Court concludes that Count Five of Plaintiff's complaint must be dismissed as frivolous.

### Count VI

Count Six alleges denial of equal protection based on Plaintiff's assertion that because of his maximum security confinement he is unable to borrow books from the prison library, which is available only to lower security inmates in other housing units.  This claim is also entirely without merit.  "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated."  *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991).  Clearly, as a maximum security inmate, Plaintiff is not "similarly situated" to the medium and low security inmates whom he claims receive better treatment.  Moreover, there is obviously a rational basis for the disparate treatment alleged by Plaintiff, namely, promotion of institutional safety and security.

Thus, the Court concludes that Count Six of Plaintiff's complaint fails to state a claim on which relief can be granted.

### Count VII

Count Seven alleges denial of Plaintiff's so-called "constitutional right to access the press." Specifically, Plaintiff asserts that Defendants are violating Plaintiff's First Amendment rights by prohibiting him from purchasing reading materials from vendors other than those approved by the prison commissary system. Plaintiff's Amended Complaint states that the prison only allows inmates to purchase reading materials from Barnes and Noble and Edward Hamilton. Plaintiff alleges that this amounts to a monopoly in favor of the prison commissary and denies "the press, vendors [and] publishers . . . their right to expose [Plaintiff] to their materials and sell [Plaintiff] their wares."

The First Amendment protects a prisoner's right "to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 92 S. Ct. 2576 (1972)(internal citations omitted). However, the prison may impose restrictions on inmates' incoming mail if those restrictions are reasonably related to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 1881 (1989). In *Turner v. Safley*, the Supreme Court articulated four factors relevant to the constitutionality of a prison's restrictions on free speech: (1) whether a valid,

16

rational connection exists between the regulation and the government interest it protects; (2) whether prisoners have alternative means of exercising the protected right; (3) the impact of accommodating the right on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254 (1987).

Plaintiff's allegations are insufficient to show that prison policies requiring inmates to purchase books only from selected vendors is not reasonably related to legitimate penological interests. First, there is an obvious connection between the prison's approved vendor policy and the governmental interest in preventing contraband from entering the prison. Second, the approved vendor policy has not been shown to prevent inmates from exercising their protected rights. Plaintiff has not alleged that he has been denied a specific book which he would otherwise be allowed to possess if not for the approved vendor policy. Third, requiring the prison to allow shipments from all vendors would undoubtedly make it more difficult to monitor incoming mail and would demand additional resources. Finally, Plaintiff has not alleged the existence of an alternative that would have de minimis impact on valid penological objectives. Thus, the Court finds that Plaintiff's allegations do not support the conclusion

that the approved vendor policy is unreasonable under *Turner*.

In addition, although Plaintiff vaguely asserts that the prison has a monetary motive for limiting the number of vendors permitted to ship books to the prison, he does not allege specific facts showing that the prison actually benefits financially from the policy.  Nor does Plaintiff allege that the vendor restriction is designed, or operates, so as to target specific categories of speech.  Essentially, Plaintiff merely alleges that he could obtain certain books cheaper if able to purchase from vendors other than those approved by the prison. The fact that the prisons valid security concerns make it more difficult or expensive to obtain books, however, is not sufficient to make out a constitutional violation.

Thus, the Court concludes that Count Seven of Plaintiff's complaint fails to state a claim on which relief can be granted.

### Count VIII

Count Eight asserts that Defendants Feickert, Perry and Fairbanks subjected Plaintiff to cruel and unusual punishment by intentionally keeping the temperature in Plaintiff's cell block uncomfortably low.  Specifically, Plaintiff alleges that Defendants routinely open the doors during the winter to allow cold air in, and that during the summer they run the air conditioner too much.

The Eighth Amendment's prohibition on cruel and unusual

punishment requires that prison officials "provide humane conditions of confinement by ensuring that inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). However, the Eighth Amendment "'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh'" without amounting to a constitutional violation. *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2402 (1981)).

An Eighth Amendment conditions-of-confinement claim consists of both an objective and subjective component. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Id.* Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (*quoting Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). The subjective component of a conditions-of-confinement

claim requires the plaintiff to show that the defendant exhibited "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 832.  Deliberate indifference "requires both knowledge and disregard of possible risks, a mens rea on a par with criminal recklessness."  *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001).  The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

Plaintiff's allegations regarding the temperature in his cell are insufficient to state an Eighth Amendment claim. Plaintiff's allegations do not support the conclusion that he faced a substantial risk of serious harm due to exposure. Although Plaintiff states that he was uncomfortable, there is no indication that he suffered any significant physical effects from the cold or that he was ever in serious danger of cold related injury.  In addition, Plaintiff's allegations do not support the conclusion that Defendants were subjectively aware that Plaintiff faced a substantial risk of serious harm.  In fact, it appears from Plaintiff's allegations that Defendants' motive was merely to regulate the temperature at a level they felt was most comfortable.  Although Plaintiff alleges that he told officers he was uncomfortable, it does not appear the officers believed Plaintiff was in any danger.  A mere disagreement between

20

Plaintiff and prison officials regarding the most comfortable temperature at which to maintain the cell block does not amount to a constitutional violation.

Thus, the Court concludes that Count Eight of Plaintiff's complaint fails to state a claim on which relief can be granted.

### Count IX

Plaintiff's Ninth cause of action alleges cruel and unusual punishment based on "punitive food rations."  Specifically, Plaintiff alleges that since his transfer to the Uinta 1 housing unit he has received only cold "sack" meals for breakfast and lunch.  Plaintiff asserts that the denial of hot meals for breakfast and lunch is punitive and that the decision to provide only sack meals was "purely arbitrary."

Plaintiff has not asserted any legal basis for his claim that denial of hot meals for breakfast and lunch constitutes cruel and unusual punishment.  Under controlling Tenth Circuit precedent prisoners are constitutionally entitled to "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  Ramos v. Lamm, 639 F.2d 559, 570 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981).  The Court is aware of no legal precedent holding that providing inmates only cold meals for breakfast and lunch violates the Eighth Amendment.

Plaintiff does not allege that the sack meals are nutritionally inadequate, or that they are prepared or served in unsanitary conditions.  Nor does Plaintiff allege any significant injury resulting from the lack of hot meals.  Finally, Plaintiff's allegation that the decision to provide only sack meals was arbitrary is unavailing.  Because Plaintiff has not alleged facts showing that the policy violates a legally recognized liberty interest no due process was required in reaching the decision.  Thus, the Court finds that Plaintiff's Ninth cause of action fails to state a claim for relief.

## Count X

Count Ten of Plaintiff's complaint alleges that as part of Defendants' "abusive, oppressive, cruel and humiliating pogrom" prison officials require Plaintiff to wear a "spit hood" whenever he is out of his housing section.  Plaintiff states that this policy serves no penological interest, and that it is a punitive abuse of authority.

Plaintiff has not asserted any legal basis for his assertion that the "spit hood" requirement is unconstitutional.  Exhibit 1.P to Plaintiff's Complaint shows that the "spit hood" policy applies to all inmates on Intensive Management regardless of whether they have a history of spitting.  Moreover the policy undoubtedly serves the penological purpose of preventing Intensive Management inmates from assaulting prison staff or

other prisoners.  Thus, the Court concludes that Plaintiff's allegations in Count Ten fail to state a claim for relief.

### Count XI

Count Eleven alleges cruel and unusual punishment based on the restriction of Intensive Management inmates to only three showers per week.  Again, Plaintiff does not assert any legal basis for this claim.  Allowing only three showers per week does not amount to a denial of the "minimal civilized measure of life's necessities." *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2326 (1991).  Nor has Plaintiff offered any facts to support his assertion that the policy is intended as punishment or harassment.  Instead, it appears this is part of the standard regime applicable to all Intensive Management inmates.  Thus, the Court concludes that Count Eleven fails to state a constitutional claim.

### Count XII

Count Twelve of the Complaint alleges that Plaintiff was denied adequate supplies for cleaning his cell forcing him to "live in filth."  Specifically, Plaintiff states that for more than nine months the only cleaning supplies he received were soap balls and paper towels, and that he was denied access to a mop, broom, dust pan, toilet brush, or sponge.

Plaintiff's allegations do not rise to the level of a constitutional violation.  As discussed in Count Eight, a

conditions-of-confinement claim requires both an objective and subjective showing.  Regarding the objective component, Plaintiff's allegations do not show that he was housed in conditions that posed a serious threat to his health or safety. Nor has Plaintiff satisfied the subjective requirement by showing that Defendants were aware that the conditions in his cell were inhumane.  Thus, the Court finds that Count Twelve fails to state a claim of cruel and unusual punishment.

## Count XIII

Count Thirteen alleges denial of access to the Courts based on confiscation of a cassette tape which Plaintiff states was a recording of Deputy Warden Blake Neilson's testimony at a hearing relevant to another of Plaintiff's cases.  Plaintiff states that he ordered the tape from the Utah State Records Committee, where it was returned after being confiscated as contraband.

Plaintiff cannot show that the denial of the cassette tape significantly interfered with his access to the courts.  Even accepting Plaintiff's claims regarding the contents of the tape it is not clear that the testimony had any relevance to any legal proceeding.  Moreover, prohibiting Plaintiff from possessing the cassette tape would not foreclose Plaintiff from obtaining a written transcript of the alleged testimony.  Thus, the Court concludes that Count Thirteen fails to state a claim on which relief can be granted.

**Count XIV**

Count Fourteen alleges denial of due process in Offender Management Review (OMR) proceedings.  Plaintiff states that contrary to prison policies the Uinta 1 OMR committee punished Plaintiff based on a negative "Chronological Note" ("C-Note) he received.  Plaintiff alleges that the OMR committee considered the C-Note when reducing Plaintiff's privilege level from a "B" to a "C," which caused Plaintiff to lose privileges including phone access, canteen and visitation.

Plaintiff cannot mount a constitutional challenge to the procedures used to modify his privilege level because such changes do not implicate protected liberty interests.  The privileges allegedly withheld from Plaintiff due to the reduction of his privilege level cannot be considered are not necessities of life by any stretch of the imagination, thus, withholding them does not amount to cruel and unusual punishment.  *See Wilson*, 501 U.S. at 298.  Thus, the Court concludes that Plaintiff cannot state a claim based on the denial of due process in OMR proceedings.

**Count XV**

Count Fifteen alleges denial of property without due process of law, in violation of the Fifth and Fourteenth Amendments. Specifically, Plaintiff alleges that Defendants Fairbanks and Watson confiscated "two new t-shirts, new drinking cup, new bowl

and chapstick" from Plaintiff's cell.  Plaintiff states that this property was valued at $10.31.

In *Hudson v. Palmer*, 468 U.S. 517,  104 S. Ct. 3194 (1984), the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  Thus, in a § 1983 action for damages resulting from the unauthorized deprivation of property without procedural due process, the plaintiff has the burden of pleading and proving that state processes, including state damage remedies, are inadequate to redress the claimed wrong.  *See Gillihan v. Shillenger*, 872 F.2d 935, 940 (10th Cir. 1989); *Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983).

Plaintiff has not alleged that meaningful post-deprivation remedies were denied to him or that available state remedies are inadequate to redress his alleged loss.  Plaintiff clearly could have pursued relief for the confiscation of his properly through the prison grievance process or through the state courts.  Thus, the Court concludes that Count Fifteen, alleging denial of property without due process, fails to state a claim on which relief can be granted.

## Count XVI

Count Sixteen asserts that even if the previous causes of

action are insufficient to state a claim in their own right,
"[a]ny two of the foregoing counts in unison with one another
constitute a separate issue."  It appears Plaintiff believes he
can state a valid constitutional claim merely by combining two or
more of his deficient claims.  This "pick-two" legal strategy is
clearly without any legal basis whatsoever.  Thus, the Court
concludes that Count Sixteen must be dismissed as frivolous.

### Count XVII

Count Seventeen alleges that the prison grievance process is
a sham used by prison officials to prevent inmates from accessing
the courts.  Plaintiff states that prison staff routinely ignore
grievances, fail to observe deadlines, and retaliate against
inmates for filing grievances.  Plaintiff cites numerous
incidents where grievance procedures allegedly were not followed
correctly.

Even accepting Plaintiff's allegations regarding the
shortcomings of the prison grievance system, his allegations do
not show denial of access to the courts.  Under Tenth Circuit
precedent a "prisoner is required to exhaust only those
administrative remedies that are 'actually available.'"  *Basham v
Uphoff*, No. 98-8013, 1998 WL 847689, at *4 (10th Cir. Dec. 8,
1998) *(quoting Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.
1997).  As recognized by other circuits, "a remedy that prison
officials prevent a prisoner from utilizing is not an 'available'

remedy under § 1997e(a)." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *see also Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002). Thus, "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002).

In accordance with the Supreme Court's recent decision in *Jones v. Bock*, 127 S. Ct. 910, 921 (2007), the Tenth Circuit no longer considers exhaustion of administrative remedies a pleading requirement. Thus, nothing prevents an inmate from filing a suit with unexhausted claims. However, once exhaustion is raised as an affirmative defense the inmate will be required to present evidence showing that his claims were fully-exhausted. This can be accomplished either by showing compliance with all the necessary grievance procedures, or by showing that efforts at exhaustion were thwarted by prison officials. Under this procedure it would be impossible for prison officials to deny access to the court merely by mishandling an inmate's grievances.

Thus, the Court finds that Count Seventeen of Plaintiff's complaint has no basis in fact and must be dismissed as frivolous.

## CONCLUSION AND ORDER

Based on its review of each of Plaintiff's causes of action and the supporting documentation the Court concludes that Plaintiff's Complaint and Amended Complaint fail to state a viable claim for relief under 42 U.S.C. § 1983.  Moreover, given the well-settled nature of the law governing Plaintiff's claims, and the exhaustiveness of his pleadings, the Court concludes that it would be futile to allow Plaintiff further opportunity to amend.  This is not a case where Plaintiff's "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him." *Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir. 1990).

Accordingly, **IT IS HEREBY ORDERED** that this case is **dismissed** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted.  *See* 28 U.S.C.A. § 1915 (West 2007).

DATED this 10th day of April, 2007.

BY THE COURT:

Dale A. Kimball
United States District Judge